WESTMORELAND SPECIALTY CO., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 18835. Promulgated January 16, 1930.

*J. M. Kennedy, Esq.,* for the petitioner.
*J. L. Backstrom, Esq.,* for the respondent.

OPINION.

Van Fossan: The fundamental question in this proceeding is whether the 327 shares of the capital stock of the Westmoreland Specialty Co. which were purchased from George R. West were reissued by the company to Charles H. West and Ira F. Brainard as compensation for services rendered by them during 1921.

Ira F. Brainard was not an officer of the company and there is no evidence that he performed any active service of any kind for the corporation during 1921, except in an advisory capacity as a director.

As a matter of fact, it is stated in the evidence that the reason the stock was issued to him was because for years he had loaned the company money when it was needed. Consequently, we can not hold that the value of any part of the stock delivered to him is deductible as compensation paid to him for services rendered in 1921.

As to the stock issued to Charles H. West, it is claimed that the services rendered by him during part of 1921 were of exceptional value; that the machinery at the plant had deteriorated badly; that the two sons of George R. West, who were placed in responsible positions, had retarded progress, destroyed valuable molds, caused unsalable articles to be manufactured and disorganized the employees and that George R. West had deliberately neglected the company's business. That there was a lack of harmony in the organization is clear, but that all of the conditions and effects claimed actually existed is not convincingly proven.

Examination of the corporation's balance sheet for 1921 shows that during that year no plant additions or changes of a capital nature were made, and in the corporation's income and profits report for that year only the sum of $3,327.68 was deducted for repairs, which are stated as " ordinary and incidental repairs." The books of the corporation contain entries of cash paid to George R. West for expenses on various business trips taken between January 1 and the latter part of May, 1921. The books of the company also show that the sales made by the company in January, February, March, April, and May, 1921, during which George R. West was president of petitioner, were approximately the same in amount as those for the same months of 1920. There is some testimony, it is true, that Charles H. West, after he became president, made a few trips in 1921 to get in touch with some of the petitioner's important customers but there is no specific evidence that he personally made any extraordinary efforts to increase sales during 1921 beyond those that should have been made by one in his position. In fact, the book entries as to commissions paid to resident sales agents and as to travel expense indicate that a large part of the sales for 1921, which amounted in total to approximately $566,000, was negotiated by persons other than Charles H. West. It can not be said, therefore, that the evidence leads to the conclusion that the plant or the business was in a precarious condition in May, 1921, when Charles H. West was elected president of the petitioner, or that extraordinary efforts above and beyond those reasonably to be expected of him were necessary or were performed by him.

Moreover, the evidence impels us to the conclusion that the 308 shares of treasury stock issued to Charles H. West were not issued

to him as payment for services rendered. There is no entry in any of the petitioner's books indicating the reason for such issuance. The minutes of the meeting of December 22, 1921, at which the directors authorized Charles H. West to buy George R. West's stock for the petitioner, state that the stock, when purchased, should be placed in the treasury of the company to be disposed of at the discretion of the directors. The minutes of the stockholders' meeting of January 19, 1922, set forth that the treasury stock was issued to Charles H. West in consideration of $1 and other valuable considerations. Neither the minutes of the meeting of December, 1921, nor those of the meeting of January 19, 1922, contain any suggestion that the distribution of the stock was for the purpose claimed in this proceeding and nowhere else in the minutes of meetings of the directors or stockholders does there appear any reference to the transaction in question.

The preponderance of evidence convinces us that the treasury stock was distributed in the amounts stated in the findings of fact for the purpose of dividing the 1,000 authorized shares equally between Charles H. West and the Brainard family, and for no other purpose. In a deposition made by Ira F. Brainard on December 7, 1926, and admitted in evidence at the hearing, the witness stated in substance that after the resignation of George R. West, Charles H. West was the only one remaining who understood the business in all its details and that he, Ira F. Brainard, thought that Charles H. West should, therefore, own a larger amount of the petitioner's stock.

In the same deposition the witness, speaking of George R. West and his 327 shares of stock said:

We found that he wanted to sell the stock outside, but we didn't want him to sell it outside. That's why we bought it.

The following questions and answers also appear in the deposition:

Q. And you say that after you acquired the stock of George R. West, that you and the remaining stockholder, C. H. West, agreed to reorganize?

A. Yes, sir.

Q. And it was in pursuance of that agreement to reorganize that you distributed the stock so that Charles H. West would have fifty per cent of it?

A. Fifty per cent of it, yes, and it was so divided.

During his cross-examination Charles H. West, who was sworn as a witness at the hearing, testified as follows:

Q. Is this the substance of your agreement entered into at the time your brother retired from the presidency that you and Mr. Brainard would issue treasury stock so as to equalize the ownership of the company between you?

A. Yes, sir.

Q. From then on you would be equal partners, so to speak, in the business?
A. Yes, sir.

In our opinion the foregoing quotation from the testimony contains the reasons for the distribution of the treasury stock to Charles H. West and Ira F. Brainard. When Charles H. West and the family of Ira F. Brainard each held 500 of the 1,000 authorized shares of the company the agreement respecting the treasury stock was fully performed and the sole purpose of the distribution was effected.

We are, therefore, of the opinion that the respondent did not err in disallowing the deduction of the par value of the stock as a payment to officers of the petitioner for services rendered during 1921.

Turning to the second issue, the proof is wholly insufficient to establish petitioner's alleged error. No abnormality in capital or income prerequisite to relief under sections 327(d) and 328 of the Revenue Act of 1921 is proven. Nor does our denial of petitioner's first contention, in our opinion, create such an abnormality as alternatively argued by petitioner. The total deductible compensation paid to petitioner's officers during 1921 was $24,000. The evidence does not prove that the compensation was unduly low for the business done by the company or an inadequate reward for the services rendered by the officers. It follows, therefore, that in respect to the second issue, the petitioner's claim should be denied. *Goodheart's Broadway Laundry Co.*, 7 B. T. A. 978; *Watt & Shand, Inc.*, 2 B. T. A. 1273; *United Shoe Stores Co.*, 2 B. T. A. 73; *Eagle Piece Dye Works*, 10 B. T. A. 1360.

*Decision will be entered for the respondent.*